# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Chubb Custom Insurance Company,**

    **Plaintiff,**

**-V-**

**Grange Mutual Casualty Company,** *et al.***,**

    **Defendants.**

Case No.: 2:07-cv-1285
JUDGE SMITH
Magistrate Judge King

## ORDER

This matter is before the Court on Plaintiff Chubb Custom Insurance Company's Motion to Bifurcate and Stay Defendants' Bad Faith Counterclaim (Doc. 12). Defendant Grange Mutual Casualty Company has filed a response and the motion is now ripe for review. For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Bifurcate.

## I. BACKGROUND

Plaintiff Chubb Custom Insurance Company ("Chubb") initiated this declaratory judgment action against Defendant Grange Mutual Casualty Company ("Grange") to determine the parties' rights and obligations under the terms, conditions, and exclusions of the professional liability policy (the "Policy") issued by Plaintiff Chubb. The Policy indemnified Defendant Grange Mutual Casualty Company ("Grange") for any loss resulting from any act involving Grange's claims handling and adjusting. The Policy was issued for July 1, 2004 through July 1, 2005. This dispute involves two class action lawsuits involving Defendant. The first class action lawsuit, *Hensley, et al. v. Computer Sciences Corp., et al.* (the "Hensley Action"), was

brought against Defendant, among others, but was dismissed without prejudice on December 11, 2007.  The second class action lawsuit, *Gooding et al. v. Grange Indemnity Insurance Co. et al.* (the "Gooding Action") was filed on December 4, 2007.  The lawsuits allege that a group of insurance companies, including Defendants, conspired among themselves to purchase, calibrate, and implement three computer software programs so that the insurers could use the software to systematically and uniformly underpay the UM/UIM benefits due to their respective policyholders.  As a result, the insurers, including Defendants, reaped improper and illegal profits for themselves at the expense of their respective policyholders.

Chubb was notified of the Hensley Action in May 2005.  Chubb issued reservation of rights letters to the Defendants, reserving Chubb's rights under the terms, conditions, and exclusions of the Policy.  Chubb issued a supplemental reservation of rights letter after Defendants announced their shift in defense strategy for the Hensley Action from litigation to settlement.  Chubb initiated this action after receiving notification that Defendant had submitted a stipulation of settlement in the Gooding Action on December 12, 2007.  Plaintiff Chubb seeks a declaratory judgment that it has no duty to indemnify any of the Defendants for any amounts that are payable or may be payable by any of the Defendants as a result of the Hensley Action or the Gooding Action or the stipulation of settlement of the Gooding Action because the Hensley and Gooding Actions do not fall within the applicable insurance clause of the Policy and, further, because any amounts paid or payable in such actions do not constitute "Loss" under the Policy and are otherwise excluded from coverage under the terms of the Policy.  Additionally, Chubb seeks a declaration that it has complied with any duty it might have under the Policy with respect to "Defense Costs" because it has advanced over $1.8 million to Defendants for fees and costs incurred in defending the Hensely Action.  Finally, Chubb requests a declaration that the

Defendants must reimburse it for all fees and costs advanced pursuant to Chubb's reservation of rights under the Policy in the event that this Court grants declaratory judgment in favor of Chubb on one or more of the other declaratory judgment counts set forth in the Complaint.

The Defendants filed an answer, affirmative defenses and counterclaims for breach of contract, indemnification, and estoppel, in which they seek coverage for the Hensley Action, the Gooding Action and/or the stipulation of settlement in the Gooding Action. Additionally, Defendants have asserted a counterclaim for bad faith and seek an award of punitive damages. In preparation of the parties Rule 26(f) Report, Defendants indicated their intent to pursue a broad range of discovery with respect to their counterclaim, which includes expert testimony and requests for Chubb's privileged communications with its attorneys. Plaintiff therefore filed this Motion to Bifurcate.

## II. MOTION TO BIFURCATE

Plaintiff Chubb requests the Court bifurcate and stay the Defendants' bad faith counterclaim pending resolution of the parties' coverage claims pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. Rule 42(b) specifically states:

> **Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Rule 42(b) therefore authorizes a court to bifurcate a trial in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. Bifurcation is the exception to the general rule that disputes should be resolved in a single proceeding. *See, e.g., Monaghan v. SZS 33 Assocs.*, L.P., 827 F. Supp. 233, 246 (S.D.N.Y. 1993); *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978). A decision on bifurcation

should be grounded in the facts and circumstances of each case. *See Saxio v. Titan-C-Mtg, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). The ultimate decision to grant or deny bifurcation is left to the sound discretion of the trial court. *Id.* In determining whether separate trials are appropriate, the court should consider several facts, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 329 (6th Cir. 2007) (*quoting Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). Federal courts have long adhered to the rule that bifurcation should be ordered only in exceptional cases because "[t]he piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." Wright & Miller, *Federal Practice and Procedure* § 2388, at 474 (2nd Ed. 1999); *see also Home Elevators, Inc. v. Millar Elevator Service Co.*, 933 F. Supp. 1090, 1091 (N.D. Ga. 1996).

Plaintiff asserts that bifurcation of the bad faith counterclaim will promote convenience, economy and expedience. Further, Plaintiff argues that there is no prejudice to Defendants because the bifurcation simply postpones their counterclaim, but rather, there is prejudice to Chubb. Plaintiff relies on *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005) and *Garg v. State Auto Mut. Ins. Co.*, 155 Ohio App.3d 258 (2003), in support of its argument that this Court should bifurcate the coverage claims at issue in this case from the Defendants' bad faith counterclaim and stay any discovery on the bad faith claim until the coverage claims are resolved. In *Smith*, the Sixth Circuit affirmed the trial court's decision to bifurcate the coverage claim and the bad faith claim. The Court held that "because the merits of the bad faith claim depended on whether the limitations provision [contained in the policy] was valid, it was reasonable for the court to resolve the validity question before allowing the bad faith claim to

4

proceed." *Smith*, 403 F.3d at 407. The *Garg* court held that the trial court abused its discretion when it refused to grant the carrier's motion to bifurcate the coverage and bad faith claims. Further, the court restricted discovery of Grange's attorney-client communications and attorney work product materials. *Garg*, 155 Ohio App.3d at 265-266.

Courts do not require bifurcation as Plaintiff contends. There is no absolute rule that a coverage claim should always be bifurcated from bad faith claim, as illustrated by the following cases in which bifurcation was denied. *See Athey v. Farmers Ins. Exchange*, 234 F.3d 357, 361-62 (8th Cir. 2000) (affirming denial of motion to bifurcate bad-faith claim because insurer "had not shown that [the insured's] access to its claim files prejudiced its case"); *Light v. Allstate Ins. Co.*, 182 F.R.D. 210, 213 (S.D. W.Va. 1998) (refusing to bifurcate bad-faith claim from the coverage claim); *Nathanson v. Aetna Cas. & Sur. Co.*, 2001 WL 1392165, at *1 (E.D. Pa. 2001) (denying insurer's motion to bifurcate bad-faith claim from the contract claim). Rather, the cases cited by Plaintiff merely illustrate the court's authority to bifurcate a bad faith claim if appropriate after considering the convenience and economy, as well as the potential prejudice to the parties.

Plaintiff argues that discovery and litigation of the Defendants' bad faith counterclaim against Chubb will be completely unnecessary if this Court determines that there is no coverage for the Henlsey Action, the Gooding Action and the stipulation of settlement filed in the Gooding Action. Plaintiff continues that the parties will save time and expenses by bifurcation. Finally, Plaintiff states that "it just makes good common sense to bifurcate the bad faith counterclaim and stay discovery thereon pending the resolution of the parties' Coverage Claims." (Pl.'s Mot. at 8). Defendants, however, argue that this case involves issues of fact that

are deeply interwoven between both coverage and bad faith claims. Defendants further assert that the case relied on by Plaintiff, *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 245 Fed. Appx. 495, 501 (6th Cir. 2007), in support of its argument that litigation of the bad faith counterclaim will be unnecessary if the court finds that there is no coverage, specifically recognized that:

> [B]ad faith in the adjustment of an insurance claim may exist without a valid claim for coverage; 'an insurer has a duty to act in good faith in the processing and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort irrespective of any liability arising from breach of contract.'

Further, Defendants argue that proceeding with all claims and conducting simultaneous discovery will not prejudice either party, nor will it be a waste of resources. In cases where the coverage and bad faith claims are so interrelated that "discovery relevant to the bad faith claim is also relevant to plaintiff's other claims," this Court has expressed a willingness to stay discovery only as to privileged documents that would be discoverable in connection with the bad faith claim. *See The Scotts Company LLC v. Liberty Mutual Ins. Co.*, 2007 U.S. Dist. LEXIS 65478, *5 (S.D. Ohio Sept. 5, 2007) (King, J.). Defendants have represented in their brief that they "will forego discovery of attorney-client communications or attorney work product materials, thus alleviating the concerns noted in *Scotts*." (Defs.' Memo. in Opp. at 14).

The Court therefore finds that Plaintiff has not demonstrated that it will be unfairly prejudiced by producing the documents and proceeding with all the claims all at once, including Defendants bad faith counterclaim. The Court additionally finds that bifurcating the bad-faith claim, which may result in two separate trials could result in a significant hardship to both parties. Accordingly, the interests of judicial economy favor hearing Defendants' counterclaim along with the underlying claims in this case. The Sixth Circuit has noted that when "the claim

and the counterclaim will raise many similar factual issues . . . judicial economy will be served by the resolution of the entire controversy in one forum." *Taylor Novelty, Inc. v. City of Taylor*, 816 F.2d 682 (6th Cir. 1987). That is exactly the situation here. Defendants' bad faith counterclaim and Plaintiff's declaratory judgment claims are all based on the professional liability insurance policy and the parties' rights under that Policy. Given that Plaintiff's initial claims and Defendants' counterclaim involve similar factual issues and appear to be intertwined, this Court concludes it is more efficient to hear the bad faith counterclaim along with Plaintiff's Complaint.

### III. CONCLUSION

For all of the foregoing reasons, the Court **DENIES** Plaintiff Chubb's Motion to Bifurcate. The parties are instructed to contact Magistrate Judge King's chambers to discuss a scheduling order and to proceed with discovery on all the issues in the case.

The Clerk shall remove Document 12 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**