IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHUBB CUSTOM INSURANCE COMPANY,

        Plaintiff,

    vs.                         Civil Action 2:07-CV-1285
                                    Judge Smith
                                    Magistrate Judge King

GRANGE MUTUAL CASUALTY COMPANY,
*et al.*,
        Defendants.

OPINION AND ORDER

This matter is before the Court on *Defendants' Motion to Compel Complete Responses to First Set of Interrogatories and First Set of Requests for Production of Documents Propounded Upon Plaintiff*, Doc. No. 16 ("*Motion to Compel*"), which seeks an order compelling response to 30 different interrogatories and document requests.  For the reasons set forth below, the *Motion to Compel* is **GRANTED** in part and **DENIED** in part.

I.    BACKGROUND

    A.    The Policy

Plaintiff extended professional liability insurance to defendants, various insurance companies (collectively, "Grange"). *Complaint*, Doc. No. 2, ¶ 18.  In connection with that coverage, plaintiff issued an Insurance Company Professional Liability Policy, Policy Number 7022-9033 ("the Policy"), under which Grange is a named insured.  *Id.* at ¶ 12; Exhibit A,[1] attached thereto.  The Policy provides the terms and conditions of coverage, subject to certain

---

[1] Exhibit A is a copy of the Policy, including various endorsements amending the Policy.

limitations and exclusions. *Complaint*, ¶¶ 18-25; *Policy*.[2] Under the

Policy, "Insuring Clause 1," plaintiff agrees

> [t]o pay on behalf of the **Insureds** [Grange] for **Loss**[3] which
> the **Insureds** shall become legally obligated to pay as a
> result of any **Claim** first made against the **Insureds** during
> the **Policy Period** or, if elected, the Extended Reporting
> Period, arising out of any **Wrongful Act**[4] committed by the
> **Insureds** or any person whose acts the **Insureds** are legally
> liable during or prior to the **Policy Period** while performing
> **Insurance Services**[5] including the alleged failure to perform
> **Insurance Services**.

*Policy*, p. 3 (emphasis in original).

The Policy further provides that plaintiff "shall not be liable

to make any payment for **Loss** in connection with any **Claim** made against

the **Insureds**"

> for any amounts which constitute benefits, coverage or
> amounts due or allegedly due, including any amount which
> constitutes interest thereon, from the **Insureds** as:
> i.    An insurer or reinsurer under any policy or contract

---

[2]Because the *Policy* contains several sets of page numbers, the Court will
hereinafter refer to the Court's docketing page number that appears in the upper
right-hand corner of the document.

[3]The Policy defines "Loss" as "the total amount which the **Insured** becomes
legally obligated to pay as a result of each **Claim** or **Claims** in each **Policy Period** and
the Extended Reporting Period, if exercised, made against the **Insureds** for **Wrongful
Acts** for which coverage applies, including, but not limited to, damages, judgments,
settlements, costs and **Defense Costs**." Exhibit A, p. 18 (Endorsement No. 3) (emphasis
in original). "Defense Costs" are "that part of the **Loss** consisting of reasonable
costs, charges, fees (including but not limited to attorneys' fees and experts' fees)
and expenses (other than regular or overtime wages, salaries or fees of the directors,
officers of employees of the **Insured Organization**) incurred in defending or
investigating **Claims** and the premium for appeal, attachment or similar bonds." *Id.* at
p. 12 (Section 12) (emphasis in original).

[4]The Policy defines "Wrongful Act" as "any error, misstatement, misleading
statement, act, omission, neglect or breach of duty committed, attempted, or allegedly
committed or attempted, by the **Insureds** or any person for whose acts the **Insureds** are
legally liable, which arises solely from the **Insureds** or any person for whose acts the
**Insureds** are legally liable, performing **Insurance Services** or **Financial Services**
including alleged failure to perform **Insurance Services** or **Financial Services**."
Exhibit A, p. 14 (Section 26) (emphasis in original).

[5]The Policy defines, in part, "Insurance Services" as "only those services
rendered or required to be rendered by or on behalf of the **Insureds** solely in the
conduct of the **Insureds'** claims handling and adjusting. . . ." Exhibit A, p. 28
(Endorsement No. 11) (emphasis in original).

or treaty of insurance, reinsurance, suretyship, annuity or endowment; or

ii. an administrator under any employee welfare benefit plan.

*Policy*, p. 6 (Section 4(p), hereinafter "Benefits Due Exclusion") (emphasis in original).

### B. Class Action Lawsuit Filed Against Grange

Grange was named as a defendant in a class action in the Circuit Court of Miller County, Arkansas, entitled *Hensley*, *et al. v. Computer Sciences Corp.*, *et al.*, Case No. 2005-59-3 ("the Hensley Action"). *Complaint*, ¶ 13. The plaintiffs in the Hensley Action alleged that Grange used certain software "as a 'cost containment' tool to enhance their profits at the expense of first party insured persons[,]" resulting in improper adjustments of the Hensley plaintiffs' bodily injury claims. Exhibit B,[6] ¶¶ 6-7, attached to the *Complaint*. More specifically, the plaintiffs in the Hensley Action alleged that Grange engaged in improper claims practices by reducing the amount to be paid on bodily injury claims. *Id.* at ¶¶ 164, 187, 197, 204.

Plaintiff issued to Grange reservations of rights letters, reserving its rights under the Policy. *Complaint*, ¶¶ 14, 38. During the course of the Hensley Action, plaintiff paid to Grange, pursuant to Section 7 of the Policy, "all reasonable and necessary" fees and expenses associated with the defense of that litigation, although that payment did not cover all the fees and expenses expended. *Complaint*, ¶¶ 40-41; *Defendants Grange Mutual Casualty Company, et al.'s Answer and Counterclaim to Plaintiff's Complaint, Doc. No. 4,* ¶¶ 134-135

---

[6]Exhibit B is a copy of the *Fifth Amended Complaint* in the Hensley Action "*Hensley Fifth Am. Comp.*").

("*Answer and Counterclaim*").[7]

On October 3, 2007, plaintiff and Grange discussed a mediation in the Hensley Action scheduled for October 17, 2007. *Complaint*, ¶ 3; *Answer and Counterclaim*, ¶¶ 148-149. Grange did not want a representative of plaintiff in attendance, but assured that it would update plaintiff by telephone. *Id*. Plaintiff agreed not to attend the mediation. *Complaint*, ¶ 43; *Answer and Counterclaim*, ¶ 151. Although plaintiff continued in its reservation of rights, it indicated that it would not withhold its consent from the range of the proposed settlement. *Complaint*, ¶ 44; *Answer and Counterclaim*, ¶¶ 152-54. On October 17, 2007, the Hensley parties participated in mediation and reached a tentative settlement. *Complaint*, ¶ 45; *Answer and Counterclaim*, ¶ 155. Thereafter, Grange requested that plaintiff pay the settlement in full. *Complaint*, ¶ 46; *Answer and Counterclaim*, ¶ 164.

On approximately December 12, 2007, Grange entered into a settlement with the Hensley plaintiffs ("Stipulation of Settlement").[8] *Complaint*, ¶ 47; *Answer and Counterclaim*, ¶ 98; Exhibit A ("*Stipulation of Settlement*"), attached to *Answer and Counterclaim*. The Hensley parties have submitted the Stipulation of Settlement to

---

[7]The parties disagree on whether Grange must reimburse this amount to plaintiff or whether plaintiff must pay the remaining defense costs associated with the Hensley Action. *Complaint*, ¶¶ 38-41; *Answer and Counterclaim*, ¶¶ 123-135.

[8]"In furtherance of effectuating the Stipulation of Settlement and in an effort to ensure that Grange insureds were parties to the lawsuit being settled, the parties agreed that the Hensley plaintiffs would dismiss its claims against Grange and refile those claims as part of a new lawsuit." *Answer and Counterclaim*, ¶ 108. On December 11, 2007, the Hensley plaintiffs filed a dismissal with prejudice against Grange and filed a new lawsuit, "identical in all material respects" to the Hensley Action, in the Circuit Court of Miller County, Arkansas, entitled *Gooding, et al. v. Grange Indemnity Ins. Co., et al.*, Case No. CV-2007-456-3 ("Gooding Action"). *Id*. at ¶ 109. Accordingly, reference to the "Hensley Action" will also incorporate the Gooding Action.

the Hensley Court and are awaiting approval of that settlement. *Complaint*, ¶ 48; *Answer and Counterclaim*, ¶ 98. The Stipulation of Settlement provides, among other things, that Grange will pay to eligible Hensley class members an amount of money representing "specific elements of bodily damages," which "shall not exceed the policy limit applicable to that **BODILY INJURY CLAIM**." *Stipulation of Settlement*, ¶¶ 3, 9, 17, 20, 37, 59-61 (emphasis in original). Grange also agreed not to challenge the Hensley plaintiffs' request to the Hensley court to award class counsel's attorneys' fees and expenses. *Id*. at ¶¶ 71-73.

### C. The Instant Litigation

On the same day that Grange entered into the Stipulation of Settlement, Grange challenged plaintiff's position that it had no duty to indemnify Grange for any amounts incurred in connection with the Hensley Action and/or the proposed settlement of the Hensley Action. *Complaint*, ¶ 53. Plaintiff filed the instant action on December 20, 2007, seeking a declaratory judgment regarding its duty to indemnify Grange in connection with the Henley Action. *Complaint*. Grange asserts counterclaims for breach of contract, indemnification, bad faith and estoppel in connection with plaintiff's alleged denial of coverage. *Answer and Counterclaim*.

Subsequently, plaintiff filed a motion to bifurcate and to stay the bad faith counterclaim. Doc. No. 12. On March 4, 2008, Grange served its first set of discovery requests. *Motion to Compel*, p. 6. The next day, this Court held a preliminary pretrial conference with the parties. *Preliminary Pretrial Order*, Doc. No. 13. During the

pretrial conference, the Court stayed discovery only as to Grange's bad faith counterclaim pending resolution of plaintiff's motion to bifurcate. *Id.*

On April 3, 2008, plaintiff responded to Grange's initial discovery requests, objecting to several of the requests. Exhibit B ("*Plaintiff's Responses*" or "*Plaintiff's Response to _____*"),[9] attached to *Motion to Compel*. The parties subsequently communicated regarding plaintiff's responses to Grange's interrogatories and requests for production of documents, Exhibits B, C, D, E, F, G, H, I, attached to *Motion to Compel*, but were unable to resolve their dispute. Grange thereafter filed the *Motion to Compel*. Plaintiff responded to the *Motion to Compel, Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel*, Doc. No. 17 ("*Memo. in Opp.*"), and Grange replied, *Reply Memorandum in Support of Defendants' Motion to Compel*, Doc. No. 20 ("*Reply*").

On November 3, 2008, the Court denied plaintiff's motion to bifurcate and stay Grange's bad faith counterclaim. *Order*, Doc. No. 22. In so ruling, the Court concluded "that Plaintiff has not demonstrated that it will be unfairly prejudiced by producing the documents [except attorney-client communications or attorney work product materials] and proceeding with all claims at once, including Defendant[']s bad faith counterclaim." *Id*. at 6. The Court further instructed the parties "to proceed with discovery on all the issues in the case." *Id*. at 7.

On November 13, 2008, a continued preliminary pretrial conference

---

[9]The Court will also refer to this exhibit as "*Interrogatory Nos. __*" and "*Document Request Nos. __*."

was held and all parties were represented.  *Continued Preliminary Pretrial Order*, Doc. No. 24.  The Court permitted the parties to agree, without further leave of the Court, to exceed the limits on discovery established by the Federal Rules of Civil Procedure or the Local Rules of this Court.  *Id.*  The Court ordered that, following the resolution of the *Motion to Compel*, the parties will, if appropriate, attempt to agree to terms of a protective order relating to trade secrets.  *Id.*

On December 8, 2008, plaintiff filed a certificate of service of its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  Doc. No. 25.

## II.  STANDARD

Determining the proper scope of discovery falls within the broad discretion of the trial court.  *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to requests for production of documents under Rule 34.  Rule 37(a) expressly provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "'[T]he party resisting discovery bears the burden of establishing . . . [that the request] is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'"  *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 311 (W.D. Tenn. May 14, 2008) (quoting *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999)).  *See also Kammeyer v. City of Sharonville*, No. 1:01-cv-649,

7

2005 U.S. Dist. LEXIS 9877, at *4 (S.D. Ohio May 25, 2005) (stating that "the burden is on the objecting party to show why an interrogatory is improper").

Discovery may relate to any matter that can be inquired into under Rule 26(b). Fed. R. Civ. P. 33, 34. Rule 26(b)(1) authorizes discovery regarding any non-privileged matter relevant to the subject matter of the pending action. Fed. R. Civ. P. 26(b)(1). *See also Miller v. Federal Express Corp.*, 186 F.R.D. 376, 383 (W.D. Tenn. 1999) ("Relevancy for discovery purposes is extremely broad."). The information sought need not be admissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). These discovery provisions are to be liberally construed. *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964); *Dunn v. Midwestern Indem.*, 88 F.R.D. 191, 195 (S.D. Ohio 1980).

## III. DISCUSSION

The parties' discovery dispute spans several different requests. The Court will address each request in turn.

### A. Discovery Concerning "Plaintiff's Other Insureds" (*Interrogatory Nos. 2, 3 and 4; Document Request Nos. 7, 8, 9, 10, 11 and 12*)

Grange seeks to compel information regarding "Plaintiff's Other Insureds." *See Interrogatories Nos. 2, 3* and *4; Document Request Nos. 7, 8, 9, 10, 11 and 12*. Grange initially defined "Plaintiff's Other Insureds" as "Plaintiff's other customers that: (a) have the same *or similar* insurance policy as Defendant's Policy, namely the Insurance Company Professional Liability Policy; and (b)were named as defendants

8

in the Hensley Action." Exhibit A, p. 2, attached to *Memo. in Opp*.

(emphasis added). In the *Motion to Compel*, however, Grange narrowed

the definition of "Other Insureds" to "(1) other insurance companies

who are insureds of Chubb, (2) are named as defendants in the <u>Hensley</u>

Action [which, according to Grange, names approximately 400 insurance

companies as defendants], and (3) who have the *same* policy as was

issued to Grange." *Motion to Compel*, p. 9 (emphasis added). However,

Grange later changed its position once again, arguing that it is not

burdensome for plaintiff to identify "similar" policies. *Reply*, p. 5.

These requests seek discovery of "(a) the Other Insureds; (b) the

Other Insureds who have submitted demands for indemnification coverage

relating to the <u>Hensley</u> Action; and (c) Other Insureds ***who were***

***granted indemnification coverage by Chubb under the same Policy***."

*Motion to Compel,* p. 9. (emphasis in original). Through this

information, Grange hopes to determine (1) if plaintiff treated other

similarly situated insureds differently than Grange, a fact that, if

true, undermines plaintiff's current position, and (2) plaintiff's

exposure in connection with the Hensley Action, which assertedly goes

to plaintiff's credibility in denying coverage to Grange. *Id*. at 10,

16-17.

Plaintiff contends that these discovery requests are overly

broad, irrelevant to the issue of coverage, unduly burdensome, seek

confidential and proprietary information for which non-parties hold

valid privileges, and should be denied or postponed until such time,

if ever, as the Court determines that the Policy provisions are

ambiguous.[10]  *Memo. in Opp.*, pp. 2-11.  The Court will address each
objection in turn.

###    1.    Overly Broad

Plaintiff first argues that the requests are overly broad because
Grange seeks discovery of "Other Insureds" under policies "similar" to
that issued to Grange; plaintiff argues that response to such requests
would require plaintiff to manually compare terms of various policies
and speculate as to which policies are "similar" to the Policy.  *Id.*
at 5.  This Court agrees.  The term "similar" is vague.  Indeed,
Grange offers no guidance in determining what might constitute a
"similar" policy and plaintiff would be left to use its own subjective
criteria in speculating whether a particular policy is "similar" to
the Policy.  Permitting Grange to employ such a vague criterion
significantly increases the burden on plaintiff and the Court can
envision yet additional discovery disputes challenging plaintiff's
chosen standards.  Accordingly, the Court construes the term "Other
Insureds" to refer to plaintiff's insureds who (1) have the same
policy as Grange, and (2) were named as defendants in the Hensley
Action.

###    2.    Relevance

Plaintiff also contends that the discovery requests regarding
Other Insureds are nevertheless irrelevant.  *Id.* at 7-9 (citing, *inter*

_____

[10]In addition to this last argument, *i.e.,* that the Court should postpone
discovery, plaintiff argues that the discovery requests relate only to Grange's bad
faith claim, discovery of which was initially stayed by this Court.  *Memo. in Opp.*, p.
4.  However, in light of the Court's *Order* determination that the parties should
proceed with discovery on *all* issues, these two objection are now moot.  *Order*, Doc.
No. 22, pp. 6-7.  *See also Kennedy v. Cleveland*, 797 F.2d 297, 300-01 (6th Cir. 1986)
(providing that the trial court has the right to control the discovery schedule).

*alia, Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*, No. 06-cv-443, 2007 WL 3376831 (S.D. Ohio Nov. 8, 2007)).  Grange argues that *Retail Ventures* and similar cases are distinguishable because, in this case, it seeks to determine whether plaintiff indemnified Other Insureds who have made the same claim based on the same factual event, *i.e.,* the Hensley Action.  *Reply*, pp. 5-6.

Grange's argument is well-taken.  In *Retail Ventures*, the Court refused to compel discovery concerning the defendant's treatment of other policyholders' claims based on *any* incident of computer crime, computer fraud, computer hacking, etc., rather than the specific incident at issue.  *See Retail Ventures*, 2007 WL 3376831.  Conversely, Grange seeks information regarding plaintiff's treatment of Other Insureds' claims based on the same triggering event, the Hensley Action.  The Court concludes that such information is reasonably calculated to lead to the discovery of admissible evidence.  *See*, *e.g., Trestman v. Axis Surplus Ins. Co.*, No. 06-11400, 2008 U.S. Dist. LEXIS 40687 (E.D. La. April 29, 2008) (permitting discovery regarding payment of other similarly situated insureds' business loss claims based on the same event, Hurricane Katrina).  *See also Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552 (1994) (enumerating the elements necessary to a finding of bad faith).

### 3.   Undue Burden and Privilege

Plaintiff also argues that determining whether any of the "over 500 insurance carriers" named as defendants in the Hensley Action are plaintiff's customers is "an enormous undertaking" because "[f]or business purposes, the individual insurance carriers may or may not separately purchase and/or maintain insurance policies in their own

name." *Memo. in Opp.*, at 5. In support of its contention that such an undertaking "would be extremely expensive and time-consuming[,]" plaintiff relies on the declaration of Michele Underwood, plaintiff's Assistant Vice President. Exhibit B, ¶ 1, attached to *Memo. in Opp.* ("*Underwood Declaration*"). Ms. Underwood estimates that a single individual, paid $95 per hour and working 40 hours a week, would require 36 weeks to determine whether "any of the more than 500" defendants in the Hensley Action were plaintiff's customers -- an effort that would cost plaintiff more than $136,000. *Id*. at ¶¶ 5-6. Ms. Underwood also estimates that additional time would be necessary to locate, review and redact relevant claims files, at a cost exceeding $83,000. *Id*. at ¶¶ 9-14. In response, Grange contends that plaintiff has alleged undue burden without even attempting to identify Other Insureds who were granted indemnification coverage by plaintiff. *Reply*, pp. 3-4.

Grange's argument is well-taken. The discovery sought by these requests is sought by Grange only to explore the possibility that it was treated differently than other insureds. Thus, plaintiff may be able to reduce its burden by identifying, first, those defendants in the Hensley Action to whom plaintiff extended coverage. After doing so, plaintiff should be able to determine, with little associated burden, whether any of that sub-group were issued the same policy as was Grange.

If plaintiff continues to claim burden in connection with this procedure, it must be prepared to document the burden associated with this procedure. Moreover, plaintiff will be required, at this juncture, to produce only a summary of the claims paid by plaintiff to

Other Insureds, as that term has been defined by this Court.[11]

**B.  Discovery Concerning Individuals Involved in the Review of Grange's Claim and Stipulation of Settlement (*Interrogatory Nos. 5 and 7*)**

Grange seeks to discover the identity of individuals who (1) were "directly involved or consulted in the review of Defendants' Claim, including any and all individuals responsible for Plaintiff's decision to deny coverage"; and (2) were "involved in Plaintiff's review of the Stipulation of Settlement." *Interrogatory Nos. 5 and* 7. Grange contends that this information is necessary to identify those persons to be deposed. *Motion to Compel*, p. 10.

Plaintiff objects to the requests, arguing that it did not "deny" Grange's claim; rather, plaintiff reserved its rights under the Policy and filed this action in response to Grange's demand for indemnification. *Memo. in Opp.*, pp. 11-12. In addition, plaintiff argues that this discovery is prohibited by the *Preliminary Pretrial Order* and is otherwise inappropriate as relating only to extrinsic evidence that is not appropriate absent a determination that the contract language is ambiguous. *Id*. at 12. Grange does not reply to plaintiff's arguments.

As discussed *supra*, plaintiff's latter arguments are now moot in light of this Court's *Order* denying the motion to bifurcate. Doc. No. 22. More recently, plaintiff has certified that it served initial disclosures on Grange, which presumably include information responsive to these interrogatories. *See Certificate of Service of Initial*

_____

[11]Plaintiff also raises concerns of privilege. *Memo. in Opp.*, p. 7. However, plaintiff is currently required to produce only a summary of information containing no privileged material. Accordingly, the Court need not address the issue of privilege at this time.

13

*Disclosures Pursuant to F.R.C.P 26(a)(1)*, Doc. No. 25.  Based on the record presently before the Court, including Grange's failure to reply to plaintiff's arguments, it is not immediately clear that a dispute remains regarding this discovery.  Accordingly, as to *Interrogatory Nos. 5 and 7*, the *Motion to Compel* is **DENIED**.

        C.     **Discovery Concerning Plaintiff's "Objections" to the Terms and Provisions of the Stipulation of Settlement (*Interrogatory Nos. 8, 9 and 10*)**

Grange seeks an order compelling plaintiff to identify the specific provisions of the Stipulation of Settlement to which plaintiff objects, including the specific terms of the "General Damages" provision that are assertedly objectionable.  *Interrogatory Nos. 8-10*.  Grange argues that plaintiff provides lengthy objections to this discovery, but refuses to identify any specific provisions.  *Motion to Compel*, pp. 10-11.  Grange contends that the Stipulation of Settlement is an "anchor of Chubb's lawsuit" and that Grange is therefore entitled to this discovery.  *Id*. at 11.

In response, plaintiff argues that it has answered these interrogatories, including the specific inquiry regarding the "General Damages" provision.  *Memo. in Opp.*, p. 12.  Grange does not reply to plaintiff's arguments.  *See Reply*.

Because it appears that there is no longer a dispute regarding these interrogatories, as it relates to *Interrogatory Nos. 8, 9 and 10*, the *Motion to Compel* is **DENIED**.

        D.     **Discovery Concerning the Factual Bases For Plaintiff's Positions (*Interrogatory Nos. 11, 12 and 13*)**

Grange seeks to compel articulation of the factual bases for plaintiff's assertion (1) that the Stipulation of Settlement involves

disgorgement by Grange; (2) that the claims raised in the Hensley Action do not arise from "claims handling and adjusting"; and (3) that the "Benefits Due Exclusion of the Policy precludes the indemnification coverage that Grange is seeking." *Interrogatory No. 11.* Grange also seeks production of documents supporting plaintiff's answers to these interrogatories. *See Document Request Nos. 4 and 5.* Grange argues that it "would like to confirm [whether plaintiff is aware of facts to support its position] beyond the allegations made in the <u>Hensley</u> and <u>Gooding</u> Actions[.]" *Motion to Compel*, pp. 11-12.

Plaintiff contends that it need not answer these interrogatories because they are "contention interrogatories" that were "issued prematurely" -- *i.e.,* prior to the case management conference and before the parties exchanged initial disclosures. *Memo. in Opp.*, pp. 13-15. Plaintiff further contends that these interrogatories are "an improper request for a sneak preview [of plaintiff's future summary judgment motion.]" *Id.* at 14, n.6. Grange responds that "contention interrogatories" are a permissible form of discovery. *Motion to Compel*, p. 13 (quoting *Starcher v. Corr. Med. Sys.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998)).

Grange's arguments are well-taken. "[C]ontention interrogatories" are indeed permissible. *See Starcher*, 144 F.3d at 421 n.2. Moreover, plaintiff's argument that these interrogatories are premature is now moot. Accordingly, as it relates to *Interrogatory Nos. 8, 9 and 10* and *Document Request Nos. 4 and 5*, the *Motion to Compel* is **GRANTED.**

> **E.  Discovery Concerning Documents Supporting Plaintiff's Defenses and Identity of Individuals Who "Can Substantiate"**

**Plaintiff's Defenses and/or Who "Possess Knowledge of Discoverable Matters" (*Interrogatory Nos. 14 and 15*)**

Grange seeks to discover (1) "any documents evidencing, or individuals whom you believe can substantiate, any defenses that you have raised, or intend to raise, in response to any of the counterclaims asserted against you by Defendants"; and (2) individuals who "possess knowledge of discoverable matters in the above-captioned action[.]" *Interrogatory Nos. 14 and 15*.

Plaintiff contends that it need not answer these interrogatories because the parties previously agreed that they would exchange Rule 26 initial disclosures after the case management conference and after the Court ruled on plaintiff's motion to bifurcate. *Memo. in Opp.*, pp. 15-16. Grange denies that there was any such agreement as to this discovery. *Reply*, pp. 7-8.

As discussed *supra*, plaintiff's arguments are now moot. However, plaintiff's initial disclosures presumably contain the requested information regarding individuals with knowledge. Accordingly, as it relates to *Interrogatory Nos. 14 and 15*, the *Motion to Compel* is **DENIED as moot.**


**F.    Discovery Concerning Documents Related to Plaintiff's Answers to Interrogatories or Requests for Admission (*Document Request No. 1*)**

Grange asks that plaintiff produce "any and all documents used, relied upon, reviewed by, or referred to in the preparation of your responses to the First Set of Interrogatories or Requests for Admissions[.]" *Document Request No. 1.* Plaintiff initially responded to this request by stating, *inter alia*, that it relied upon pleadings

filed in the Hensley Action.  *See Plaintiff's Response to Document Request No. 1.*  Grange complains that there have been hundreds, if not thousands, of pleadings and documents filed in the Hensley Action, making it impossible for Grange to identify which pleadings and/or documents were relied upon by Grange.  *Motion to Compel*, p. 14.

In response, plaintiff characterizes this document request as an "improper" attempt to "sneak a peek" into plaintiff's litigation strategy, which is protected by the attorney-client and/or work-product doctrine.  *Memo. in Opp.*, p. 16.  Plaintiff further argues that there are "no more than a handful of pleadings" filed in the Gooding litigation.[12]  *Id.* at 17.  Grange replies that plaintiff "is now changing its story" because plaintiff stated in its initial answer that it relied upon filings in the Hensley Action.  *Reply*, p. 8.

Plaintiff's objections are without merit.  Grange is entitled to know the specific documents upon which plaintiff relies.  Accordingly, as it relates to *Document Request No. 1*, the *Motion to Compel* is **GRANTED**.

### G. Discovery Concerning Underwriting Documents (*Document Request No. 6*)

Grange seeks "any and all documents prepared, approved, reviewed, or analyzed by [plaintiff's] underwriting department relating to the Benefits Due Exclusion of the Policy."  *Document Request No. 6*.  Grange argues that this request addresses plaintiff's assertion that there is no coverage under the Policy because the claims arising from the Hensley Action fall under the Benefits Due Exclusion of the

---

[12]As discussed *supra*, the Gooding Action is an identical action filed after the Hensley Action, which the Court previously referred to collectively as the Hensley Action.

Policy.  *Motion to Compel*, p. 15.  Grange believes that the underwriting file will contain internal documents identifying risks that are covered and risks that are excluded, including evidence that plaintiff's underwriters view the Benefits Due Exclusion the same way that Grange views the exclusion.  *Id.* at 16.

Plaintiff objects to this "fishing expedition," arguing that the underwriting files amount to impermissible extrinsic evidence, which has previously been denied by other courts unless or until it is determined that a policy's language is ambiguous.  *Memo. in Opp.*, pp. 19-21.

For the reasons discussed *supra*, plaintiff's arguments are unpersuasive.  Accordingly, as it relates to *Document Request No. 6*, the *Motion to Compel* is **GRANTED**.

### H.    Discovery Concerning Plaintiff's Claims File (*Document Request Nos. 13, 14 and 15*)

Grange seeks an order compelling plaintiff to produce plaintiff's entire claims file relating to Grange's claim, including (1) "any documents in any way relating to the review of or internal deliberations regarding Defendants' Claim" and (2) "all documents related to Plaintiff's review of the Stipulation of Settlement." *Document Request Nos. 13, 14 and 15*.  Grange contends that plaintiff has refused to produce, without a legal basis, all non-privileged, responsive documents.  *Motion to Strike*, pp. 17-18.  Grange argues that it is entitled to discover internal information that may reveal that plaintiff believes that there is coverage under the Policy.  *Id*. In response, plaintiff again argues that the Court can and should first determine the coverage issue, or determine whether the Policy is

ambiguous, before permitting discovery relating to extrinsic evidence. *Memo. in Opp.*, pp. 21-23.

For the reasons discussed *supra*, plaintiff's argument is unpersuasive. Accordingly, as it relates to *Document Request Nos. 13, 14 and 16*, the *Motion to Compel* is **GRANTED**.

**I.    Discovery Concerning Plaintiff's Objections to the Stipulation of Settlement (*Document Request No. 17*)**

Grange seeks production of documents or correspondence in which plaintiff objected to terms of the Stipulation of Settlement. *Document Request No. 17*. Grange complains that plaintiff previously refused to produce such documents because plaintiff alleges that "it was not provided with a copy of the Stipulation of Settlement 'in a manner that would have allowed Chubb Custom to analyze and comment on the same.'" *Motion to Compel*, p. 18. Grange argues that plaintiff should be required to at least clarify whether or not such documents exist and, if so, whether those documents are relevant to plaintiff's assertion that the Stipulation of Settlement forms a basis for plaintiff's denial of coverage. *Id.*

In response, plaintiff contends that it first saw a copy of the Stipulation of Settlement on December 12, 2007, by which time this document had already been finalized. *Memo. in Opp.*, p. 23. Noting that it filed this action on December 20, 2007, plaintiff argues that any document created by it or its attorneys since December 12, 2007, is protected by the attorney-client privilege and/or the work product doctrine. *Id.* at 23-24. Although plaintiff argues that Grange improperly seeks privileged documents, plaintiff fails to specifically confirm whether any responsive documents exist.

The Court concludes that documents or correspondence reflecting plaintiff's objections to the terms of the Stipulation of Settlement are reasonably calculated to lead to the discovery of admissible evidence and are therefore proper subjects of discovery. *See* Fed. R. Civ. P. 26(b). Any objection based on privilege or other protection must comply with F.R. Civ. P. 26(b)(5). Accordingly, as it relates to *Document Request No. 17*, the *Motion to Compel* is **GRANTED**.

J.   **Discovery Concerning Plaintiff's Use of the Phrases "Further Evaluation" and "Additional Analysis" in Correspondence (*Document Request Nos. 20, 22 and 23*)**

Grange seeks to compel production of "any and all documents relating to, substantiating, or addressing" the terms "further evaluation" and "additional analysis," as used in plaintiff's correspondence dated June 18, 2007, August 10, 2007, and December 5, 2007. *Document Request Nos. 20, 22 and 23*. Grange complains that plaintiff indicated in its correspondence that plaintiff was conducting "further evaluation" and "additional analysis" as to indemnification, but that plaintiff "does not assert that the documents requested do not exist." *Motion to Compel*, pp. 18-19.

In response, plaintiff argues that the correspondence referenced in these requests "predate Grange's first request for indemnification coverage, which occurred on December 12, 2007." *Memo. in Opp.*, p. 24. Plaintiff contends that the letter dated June 18, 2007, acknowledged receipt of Grange's invoice for defense costs and did not refer to indemnification. *Id.* Grange does not reply to these arguments.

The Court is unable, on the record presently before it, to determine whether these requests remain the subjects of dispute and,

20

if so, whether they are reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b). Accordingly, as it relates to *Document Request Nos. 20, 22 and 23*, the *Motion to Compel* is **DENIED**.

### K.    Request for Attorney Fees

In the *Motion to Compel*, Grange seeks an award of its costs and attorney fees incurred in connection with its motion. With some exceptions, Rule 37(a)(5) of the Rules of Civil Procedure requires the payment of expenses associated with the grant of a motion to compel. Because the Court has granted some portions of the *Motion to Compel* and denied other portions, Grange's request for costs and attorney fees associated with the *Motion to Compel* is **DENIED**.

**WHEREUPON**, in light of the foregoing, *Defendants' Motion to Compel Complete Responses to First Set of Interrogatories and First Set of Requests for Production of Documents Propounded Upon Plaintiff*, Doc. No. 16, is **GRANTED** in part and **DENIED** in part in accordance with this *Opinion and Order*. Plaintiff must produce all discovery required by this *Opinion and Order* within fourteen (14) days of the date of this *Opinion and Order*.


January 30, 2009                    *s/Norah McCann King*
                                    Norah M<sup>c</sup>Cann King
                                    United States Magistrate Judge